UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
BARTOLO ROMERO,

          Plaintiff,

-against-

CAROLYN W. COLVIN,[1]
COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
-------------------------------------------------------------- x

MEMORANDUM & ORDER

11-CV-3920 (ENV)

VITALIANO, D.J.

    Plaintiff Bartolo Romero brought this action seeking, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), review of the final decision of the Commissioner of Social Security (the "Commissioner") finding that he was not "disabled" and, therefore, ineligible to receive Disability Insurance Benefits ("DIB") under Title II, the Supplemental Security Income provisions ("SSI"), and Title XVI of the Social Security Act (the "Act"). Pursuant to Federal Rule of Civil Procedure 12(c), the Commissioner and Romero have cross-moved for judgment on the pleadings.

    The Romero litigation trail is familiar. This is the second time the Court has been asked to review the findings of Administrative Law Judge Michael Gerwitz (the "ALJ") in relation to Romero's benefits application. In a prior action, see Romero v. Commissioner of Social Security, No. 06-cv-3072 (ENV) (E.D.N.Y. May 1, 2007) ("Romero I"), the motion was

---

[1] As of February 14, 2013, Carolyn W. Colvin replaced Michael J. Astrue as the Acting Commissioner of Social Security. As a result, Carolyn W. Colvin is substituted as a party to this action. See Fed. R. Civ. P. 25(d). The Clerk of Court is directed to amend the caption to reflect the change.



remanded and the ALJ was directed to address whether he had applied the appropriate weight to the opinion of plaintiff's treating psychiatrist, Dr. Luis Monge. Romero now contends that the ALJ not only failed to follow the instructions on remand, but also committed several new errors on his reconsideration. The Commissioner contends that the ALJ's determination is well supported by the evidence and is based upon the correct legal standards. For the reasons set forth below, the Commissioner's motion is denied and Romero's motion is granted, and this matter is remanded to the Commissioner, once again, for further proceedings not inconsistent with this order and before a different administrative law judge.

## Background

Romero I previously detailed the factual and procedural history of plaintiff's application for disability benefits under the Act, the law governing such awards by the Commissioner, standards for court review of them, the errors in the first go-round and the remand for further proceedings. On this review of the Commissioner's final order following remand, none of these details, familiarity with which is presumed, will be repeated here, except for clarity or emphasis. The facts and findings set forth in Romero I are incorporated by reference in this Memorandum and Order.

*First Order of Remand*

For purposes of orientation, Romero's Social Security saga began when he first applied for SSI and DIB with the Social Security Administration ("SSA") on January 28, 2004, claiming that he was unable to work due to the effects of diabetes, hypertension, depression and Hepatitis C, combined with the side effects of its treatment. His specific complaints included weakness, headaches and depression. That there is a saga means, obviously, that SSA denied the claim, which was followed by an unsuccessful administrative hearing, despite Romero having had the

2

assistance of counsel. On review, this Court found that the ALJ "failed to adequately assert his reasons for rejecting [the treating physician's] conclusions regarding Romero's mental state." Romero I at 24. Accordingly, the decision of the ALJ was reversed and the matter remanded for "some further explanation for discounting a doctor's diagnoses, opinion, and treatment." Id.

Scrutiny of the first administrative hearing, as described in Romero I, is important for two reasons. First, the course of those earlier proceedings is eerily reprised in the unfolding of the second administrative hearing. Second, while the Court's review of the first hearing and notice of determination were pending, Romero filed separate and additional applications for SSI and DIB. This time, though, SSA found that Romero was "disabled" as of March 16, 2006 – that is, the day following the date of the ALJ's decision denying Romero benefits after the first-round hearing. As a consequence of SSA's award of benefits on plaintiff's second round of disability applications, the period in controversy on the original application (the subject of the remand) was effectively narrowed to extend from July 24, 2003 only through March 15, 2006.

May 1, 2007 brought the order reversing the ALJ's decision denying Romero's original application for benefits and remanding the case to the ALJ for further proceedings, pursuant to 42 U.S.C. § 405(g). As explained in that order, the Court instructed the ALJ to give further consideration to the opinions of Dr. Monge, plaintiff's treating psychiatrist, and to explain more fully his reasoning in assessing the weight of Dr. Monge's opinions and how he factored these opinions in making the determination he was required to make by 20 C.F.R. § 4041.1527(d)(2).[2] The Appeals Council implemented the remand on September 11, 2007. ALJ Gerwitz was once again at the helm.

---

[2]  This regulation has been amended and subsection (d) has been reassigned as subsection (c). References are to the regulation in effect at the time of the ALJ's determination. There has been no substantive change to the regulation.

3

*Hearing on Remand*

The second administrative hearing on Romero's original application for disability benefits was convened on January 17, 2008. Romero, a Spanish-language speaker, appeared with counsel and testified through a translator. (R. 480-540.)[3] In addition, Lillian Lopez, a friend of Romero, testified on his behalf (R. 496-518), as did a vocational expert, Pat Green (R. 522-536).

In his live testimony, Romero described his illnesses as knee pain, arthritis, diabetes, and Hepatitis C. He explained that these ailments and afflictions prevented him from acquiring a new job. (R. 493-94.) Romero also testified that, sometimes, the work environment was difficult because people "are two-faced." (Id.) Romero also explained that, contrary to a social worker's report that his English was "70 percent intelligible," he only spoke Spanish and used Spanish throughout his working career. (R. 491-92.) After he lost his job, he added, it was difficult for him to gain new employment because he did not speak English. (R. 492-92.) After providing this testimony, Romero's attorney felt that he was in a state of emotional distress and incapable of giving further testimony. (R. 494-95.)

Lopez offered corroborative testimony that she had been a friend of Romero's for ten years, during which time she would see Romero socially three to four times a week. (R. 496-98.) She stated that she noticed a change in Romero beginning in 2003-2004, when he started to complain about his back and his knees. (R. 500.) Because of these physical defects, Lopez would, she said, accompany Romero to the doctor and help interpret (she confirmed that Romero did not speak English), assist him in traveling from place to place, and go shopping with him. (R. 496-98.) Romero, Lopez testified, could not even go to the store on his own because he

---

[3]   Record ("R.") available at ECF No. 6, filed January 6, 2012.

4

could not lift the groceries. (R. 498-99.) Similarly, Lopez observed that during those times when she could convince Romero to go for a walk, he often went only one or two blocks before having to rest for as much as 20 minutes. (R. 513-14.) According to this witness, with these limitations, Romero complained that he was depressed. (Id.) Though a lay view, she attributed his inability to work to his depression and physical deficits. (R. 511.)

Additionally, in her testimony, vocational expert Pat Green stated that, in light of Romero's illnesses, physical ailments and language and education limitations, he could not perform the jobs that he had previously held. (R. 528-29.) The ALJ asked Green to identify possible jobs that someone with Romero's limitations could perform, and Green listed "assembler of small products," "garment sorter" and "hand packager." (R. 529-30.) However, upon questioning from plaintiff's attorney, Green clarified that someone who could not walk for more than a few blocks without having to rest for 20 minutes, or who experienced tiredness as a side effect of medication, could not perform such work. (R. 531.) Romero's attorney also questioned Green regarding a series of mental and physical conditions claimed by Romero, to which Green testified that, in each case, the condition would prove a significant impediment to maintaining the type of job plaintiff previously had held. (R. 531-36.)

Despite its seeming potency, Romero might have suspected that this additional testimony was unlikely to help him, as the ALJ advised him at the start of the proceedings that he felt there was already "a complete record in the case" and that he intended to "reject [Dr. Monge's] opinion again" because it was "worthless." (R. 485-86.) Moreover, when Romero's counsel encouraged the ALJ to consider the reasons for the SSA's determination that Romero was "disabled" as of March 16, 2006, the ALJ refused, calling the SSA's decision "not that relevant." (R. 484.)

*The ALJ's Determination*

Controlling law and precedents are essentially the same as they were when Romero was last before the Court.[4] Basically, a claimant seeking DIB or SSI must show an "inability to engage in any substantial gainful activity by reason of medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Upon the original record, as supplemented at this hearing on remand, the ALJ once again professed to apply the five-step analysis as required by 20 C.F.R. §§ 404.1520 and 416.920, this time specifically looking at the period from the alleged disability onset date of July 24, 2003 through March 15, 2006 (SSA already having found Romero disabled as of March 16, 2006). At step one, the ALJ found that plaintiff did not engage in any substantial gainful activity for the relevant period. (R. 547.) At step two, the ALJ found that Romero suffered from the severe impairments of diabetes, hypertension, Hepatitis C, obesity, tachycardia, knee pain, degenerative disc disease, headaches, anxiety, depression, and substance abuse in remission. (Id.) At step three, the ALJ declared that these impairments, alone or in combination, did not equal one of the listed impairments in 20 C.F.R. § 404. (Id.) The decision also noted that Romero had only mild restrictions in activities of daily living, mild difficulties in social functioning, moderate difficulty with concentration, and no episodes of decompensation. (R. 547-48.) At step four, the ALJ determined that Romero retained the ability to perform light work, with the exception that he could only occasionally bend, stoop, crouch, kneel, climb ramps and stairs, and that he could not climb rope, ladders or scaffolds. (R. 548.) Additionally, the ALJ determined that Romero was capable of performing unskilled work and was, accordingly, able to do simple and repetitive

---

[4] See Romero I at 18-20 (review of legal standards), all of which have been incorporated by reference in this Memorandum and Order. See supra.

tasks and maintain his attention span for two-hour periods of time. (Id.) At the fifth and last step, while the ALJ determined that Romero was unable to perform his past work because such work "involve[d] a level of heavy exertion," he still found that "[b]ased on the testimony of the vocational expert . . . claimant [was] capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. 555-56.)

Troublingly, in making this determination, the ALJ once again ruled that the opinion of treating psychiatrist Dr. Monge should be accorded only limited weight. (R. 554.) The ALJ reasoned that Dr. Monge's professional assessment of plaintiff was inconsistent with his – the ALJ's – own findings, and was inconsistent with other parts of the record supporting these findings, including an assessment by consultative psychiatric examiner Dr. Herbert Meadow. (R. 554.) Based on the resulting disregard of Dr. Monge's opinion, the ALJ found that Romero would have been able to satisfy the mental demands of unskilled work during the period at issue, despite his depression and the side effects from his medication. (R. 555.)

The ALJ also found the opinion of Dr. Urbano, plaintiff's treating physician, consistent with the record, including the opinion of consultative examiner Dr. Soo Park, and, accordingly, afforded it controlling weight. (R. 553.) Additionally, in a repeat of the first hearing, the ALJ again concluded that Romero was not credible, citing his alleged evasiveness in his testimony at the first hearing about his history of drug and alcohol abuse and a positive result from a urine toxicology screening during the period in question. (R. 549.) The ALJ also noted that Romero lost his job in 2001 for loss of patronage, lost his job in 2002 because the foreman did not like him, and lost his job in 2003 owing to the job's relocation to Long Island. (R. 553.) These events, according to the ALJ, suggested that Romero had the ability, but not the desire, to engage in gainful employment. (Id.)

7

On April 16, 2008, the ALJ issued his decision. Nothing had changed. He found, once again, that Romero was not disabled. (R. 480-450.) Romero submitted exceptions to the Appeals Council, which were rejected a year and a half later on November 24, 2010. (R. 412-16.) As happened previously, a lawsuit seeking district court review followed.

## Discussion

### I. *Mental Impairments*

In granting relief following denial of Romero's original application for disability benefits, the Court, with special emphasis on the ALJ's mishandling of proof regarding plaintiff's mental impairments, restated the requirements of the regulations relating to findings essential to granting determinations following an administrative hearing, noting that "the ALJ needs to give some further explanation for dismissing a [treating] doctor's diagnoses, opinion, and treatment[.]" Romero I at 24. Unfortunately, the ALJ's decision following the second hearing not only fails to correct these previous errors, it also reflects several new ones.

Most concerning, the decision on remand does not appear to demonstrate consideration of many of the factors required by circuit precedent, such as frequency, length and nature of the treating relationship, evidence in support of the treating physician's opinion, whether Dr. Monge is a specialist, and other facts comprising part of the totality of evidence which might contradict or support Dr. Monge's position. Greek v. Colvin, 802 F.3d at 375. Furthermore, to the extent that the ALJ perceived internal inconsistencies in Dr. Monge's opinion, he was obliged to re-contact Dr. Monge and attempt to resolve them. See, e.g., Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998) (holding that "even if the clinical findings [supporting the treating physician's opinion] were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] sua sponte" on account of the ALJ's "affirmative obligation to develop the

8

administrative record"); Hartnett v. Apfel, 21 F. Supp. 2d 217, 221 (E.D.N.Y.1998) ("[I]f an ALJ perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly."). There is no suggestion in either the record or the decision that the ALJ kept faith with this duty. Rather, all indications are that there was only some discussion about further reports from Dr. Monge at the hearing, (R. 536-540), but there is no record that any further evidence was ever sought or considered. These failures make the ALJ's rejection of Dr. Monge's opinion untenable.

Moreover, in response to the Court's direction in Romero I to more fully explain his rejection of Dr. Monge's professional judgment, the ALJ simply provides his own summary conclusion that Dr. Monge's reports were inconsistent with the record, without setting forth, as the Court's remand directed, an adequate basis to assess the validity of the decision's fundamental conclusion. (R. 554.) It is true that the ALJ gave a list of Dr. Monge's allegedly unsupported findings. For the most part, though, the decision is a mere repeat of disagreements the ALJ had already baldly asserted after the first administrative hearing, and now still without any further elucidation or analysis. (Id.) For example, the ALJ concludes that Romero "had no memory problems" because he had no difficulty remembering to take his medication and keep his appointments. (Id.) In latching on to these examples of functioning, however, the ALJ failed not only to clarify why such discrete functioning outweighed the other evidence in the record supporting Dr. Monge's diagnosis, but also to account for new corroborating evidence presented at the hearing on remand, such as Lopez's testimony that she frequently visited plaintiff and accompanies him to his doctor's appointments – that is, helped him keep them. (R. 497-98). At best, the examples relied upon by the ALJ show that, from time to time, Romero was able to

perform discrete tasks that Dr. Monge's reports suggest he could not regularly perform. But, the ALJ does not explain how these discrete inconsistencies lead to the overarching conclusion that Dr. Monge's opinion should be given lesser weight than that given to the more friendly opinions of the consultative psychiatrist (R. 554.) A much more robust and sourced critique is necessary before the treating physician's professional judgment is disregarded. Greek v. Colvin at 376; Halloran v. Barnhart, 362 F.3d at 33.

Given its slapdash approach, the reasoning set forth in the ALJ's decision simply fails to justify its determination to give the treating psychiatrist's opinion slight weight. On this basis alone, remand is appropriate. See Valet v. Astrue, No. 10-CV-3282, 2012 WL 194970, at *19 (E.D.N.Y. Jan. 23, 2012) (remand was appropriate because the ALJ's reasoning in not affording controlling weight to the treating physician was "flawed and insufficient."); see also Jeffcoat v. Astrue, No. 09–CV–5276, 2010 WL 3154344, at *14 (E.D.N.Y. Aug.6, 2010) (remanding because ALJ failed to comprehensively set forth reasons for minor weight assigned to treating physician's opinions.) Regrettably, in spite of the clarity of the law and of the mandate, the ALJ on remand, in principal part, did not correctly apply the "substance of the treating physician rule." Halloran at 32.

*II. Physical Impairments*

Additionally, in light of the wealth of new evidence of plaintiff's physical impairments developed at the second hearing, the ALJ clearly failed to consider "all pertinent evidence," as the statute obliges. Calzada v. Astrue, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010). For instance, the ALJ seized on Romero's ability to keep his room clean and shop for groceries as evidence for the absence of disability. (R. 549.) However, in treating this evidence as conclusive, the ALJ again ignored important testimony regarding these abilities and evidence supporting contrary

findings of disability. Specifically, the ALJ did not apparently take into account the testimony of Lopez, which revealed that plaintiff did, in fact, have difficulty with daily activities, as he could not walk for more than 20 minutes at a time, and sometimes would have such severe back pain that he could not stand up without assistance. (R. 513-14.) In fact, it is difficult to find any mention of Lopez's testimony in the notice of determination at all. The relevant statute states that the ALJ must address "all pertinent evidence," and his "failure to acknowledge relevant evidence or to explain its implicit rejection is plain error." Calzada v. Astrue, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010); see also 20 C.F.R. § 404.1513. Furthermore, beyond these shortcomings, the evidence the ALJ cites of Romero's ability to handle some basic tasks, upon which he relies to support his determination denying benefits, runs afoul of the maxim that "people should not be penalized for enduring the pain of their disability in order to care for themselves." Woodford v. Apfel, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000); see also Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) ("We have stated on numerous occasions that a claimant need not be an invalid to be found disabled under the Social Security Act.") (quotation omitted). These failings also call for remand.

## The Second Remand

The law is plain that a district court has the authority to order that a different ALJ preside on remand. See, e.g., Kolodnay v. Schweiker, 680 F.2d 878, 879-80 (2d Cir. 1982) (upholding remand to a different ALJ after original ALJ failed to properly consider entire medical record); Sutherland v. Barnhart, 322 F. Supp. 2d 282, 292 (E.D.N.Y. 2004) ("[W]hen the conduct of an ALJ gives rise to serious concerns about the fundamental fairness of the disability review process, remand to a new ALJ is appropriate."); Gross v. Astrue, No. 08-CV-578, 2010 WL 301945, at *3 (E.D.N.Y. Jan. 15, 2010) (reversing denial of benefits by ALJ and remanding case

to new ALJ). Factors to be considered before ordering reassignment include: (1) a clear indication that the ALJ will not apply the appropriate legal standard on remand; (2) a clearly manifested bias or inappropriate hostility toward any party; (3) a clearly apparent refusal to consider portions of the testimony or evidence favorable to a party, due to apparent hostility to that party; (4) a refusal to weigh or consider evidence with impartiality, due to apparent hostility to any party. Sutherland, 322 F. Supp. 2d at 292.

In the present case, it is more than troubling that the ALJ would make comments at the outset of the hearing that suggested he was not open to new evidence and testimony, especially in light of the Court's specific direction to further evaluate on remand the opinions of Dr. Monge. (R. 485-87.) In a transparent ploy to neutralize these poisonous comments, the Commissioner attempts to color them as "appropriately put[ting] [Romero] on notice that he did not believe that the record supported Dr. Monge's conclusion, thereby affording [Romero] an opportunity to demonstrate otherwise." See Resp. Mot., Dkt. No. 17 at 21. Such disingenuous spin beggars belief. Statements such as "I'll tell you right off the bat that I'm going to reject his opinion again," (R. 485), by no means fit the Commissioner's benign description of a helpful warning notice. Rather, they are strong words suggesting a closed-minded lack of objectivity. Be there any doubt of the ALJ's hostility to Romero's claims, he added the observation that he believed at the start that there was already plenty of evidence in the record which persuaded him that Dr. Monge's opinion was "worthless." (R. 486.) Additionally, in accordance with this rigid attitude, the ALJ also bafflingly refused to look into SSA's reasons for finding Romero "disabled" as of March 16, 2006 – i.e., one day after the period under review. (R. 484.) To say the least, these statements and decisions call into question whether Romero was given a full and fair hearing on remand and whether Romero – indeed, the public at large – could have

confidence in the process or the conclusions that were reached as a result of it. Given this prologue, there is no reason to believe that ALJ Gewirtz would be open to a fair adjudication of Romero's disability claim if given another opportunity. Therefore, a different ALJ will be selected to preside on this remand.

## Conclusion

In line with the foregoing, the Commissioner's motion for judgment on the pleadings is denied and Romero's cross-motion is granted to the extent that the final order of the Commissioner is reversed, the decision of the ALJ is vacated, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this order, including the assignment of a different ALJ to preside over any hearings on remand.

The Clerk of Court is directed to enter judgment accordingly and to close this case.

So Ordered.

Dated: Brooklyn, New York
December 28, 2015

/s/ USDJ VITALIANO

ERIC N. VITALIANO
United States District Judge